IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RUSSELL JOSEPH BRETON, | CV 22–142–M–DWM |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| LAKE COUNTY and DOES 1-10, | |
| Defendants. | |

This case arises out of injuries Plaintiff Russell Joseph Breton sustained while incarcerated at Lake County Jail in Polson, Montana. Breton alleges that the defendants—Lake County and Does 1–10—inadequately screens prisoners and failed to protect him from an attack by another inmate. (Doc. 7 at ¶¶ 5–30.) He further alleges that he received inadequate medical care, (id. at ¶ 31), and that the conditions of his confinement violate the First, Eighth, and Fourteenth Amendments of the United States Constitution, (id. at ¶¶ 32–58). Lake County seeks to dismiss Breton's First Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 9.) The motion is granted in part and denied in part as outlined below.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

1

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (quotation marks omitted). At this stage, all factual allegations in the complaint are assumed to be true and the pleadings are construed in the light most favorable to the plaintiff. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021).

## BACKGROUND

In 2020, Plaintiff Russell Breton was arrested for drug charges and detained at Lake County Jail from October 15, 2020 until February 5, 2021. (Doc. 7 at ¶¶ 2–5.) On November 10, 2020, he was assaulted by another inmate, Jonathan Charlo. (*Id.* ¶ 7.) Leading up to the assault, Charlo was yelling through the vent in the day room of "Tank 2" to inmates in another Tank. (*Id.* ¶ 10.) Breton approached Charlo and asked him to be quieter. (*Id.* ¶ 11.) Charlo punched Breton, knocking him unconscious. (*Id.* ¶¶ 12–13.) Breton lay unconscious for approximately ten minutes before another inmate reported the assault to the correctional officers on duty. (*Id.* ¶¶ 15–16.) Breton was taken to the hospital

2

emergency room where he underwent a CT scan and was treated and released. (*Id.* ¶ 17.)

Upon his return to the Jail, Breton was placed in isolation with Charlo—the inmate who assaulted him—and another inmate in the recreation room for several weeks. (*Id.* ¶ 18.) Because Breton continued to experience adverse effects from the assault, he returned to the emergency room on November 15, 2020, December 23, 2020, and January 6, 2021. (*Id.* ¶ 19.) Breton also passed out while standing and hit his head on the Jail floor, causing him to be taken back to the emergency room and given another CT scan. (*Id.* ¶ 20.) After being released from custody, Breton got an MRI and his medical providers determined that he had suffered a traumatic brain injury and two strokes. (*Id.* ¶ 21.)

Breton alleges that Lake County's failure to apply a reasonable intake screening process, segregate violent offenders, and properly supervise incarcerated inmates caused his assault. (*Id.* ¶¶ 22–24.) He also alleges that Lake County failed to adequately train, supervise, and control the correctional staff, maintain video surveillance of inmate areas to ensure inmate safety, maintain an intercom or communication system, and establish policies and procedures to respond to inmate threats of violence. (*Id.* ¶ 26.) In addition to Breton's assault-based allegations, Breton also challenges a panoply of Jail conditions, including, *inter alia*, failing to provide essentials like soap and shampoo, (*id.* ¶ 32); forcing inmates to share razors, (*id.* ¶ 33); overcrowding, (*id.* ¶ 34); broken or inadequate utilities and

building infrastructure, (*id.* ¶¶ 35–36, 38); insect infestation, (*id.* ¶ 37); an absence

of fire or communication systems, (*id.* ¶¶ 39–40); limited recreational opportunities

and access to fresh air and sunlight, (*id.* ¶¶ 41–43); limited access to a law library,

(*id.* ¶ 44); inadequate solitary confinement space, (*id.* ¶ 46); lack of reasonable

access to medical and dental care, (*id.* ¶¶ 48–49); insufficient food, (*id.* ¶¶ 51–52);

and the denial of access to religious services, (*id.* ¶ 56).

Breton's pleading contains five causes of action.  Count 1 alleges a

deprivation of his Sixth, Eighth, and Fourteenth Amendment rights, including the

rights to due process of law, equal protection, and to be free from cruel and

unusual punishment.  (*Id.* ¶¶ 58–63.)  Count 2 alleges a deprivation of his First and

Fourteenth Amendment rights to free exercise of religion and equal protection.

(*Id.* ¶¶ 64–65.)  Count 3 alleges a claim against the County for the above

violations.  (*Id.* ¶¶ 66–71.)  Count 4 alleges violations of the Montana Constitution

and certain state statutes governing the operation and maintenance of jails.

(*Id.* ¶¶ 72–73.)  Finally, Count 5 alleges a claim for negligence under Montana law.

(*Id.* ¶¶ 74–76.)  Breton seeks declaratory relief and compensatory damages.  (*Id.* at

17.)  On October 17, 2022, Lake County moved to dismiss Breton's First Amended

Complaint on the ground that it "lacks sufficient detail to support the necessary

elements of his claims."  (Doc. 10 at 8.)

4

ANALYSIS

## I.      Conditions Claims (Count 1)

As outlined above, Breton's Amended Complaint contains a litany of allegations regarding the conditions of his confinement at Lake County Jail. Nevertheless, his briefing defends only two of these conditions claims: (1) the failure to protect him from another inmate and (2) the failure to provide him with adequate medical care following his assault.  Dismissal of both claims is appropriate because Breton inadequately defends these claims by failing to allege any specific conduct by any specific individuals.[1]

### A.      Failure to Protect

Breton alleges that the Jail failed to adequately screen violent offenders, allowed overcrowding in the cells, and lacked adequate visual or audio monitoring of the cells.  (Doc. 7 at ¶¶ 8–10, 26(e), (f).)  The County argues that Breton's failure to protect claim is insufficient because he "does not provide Defendants an opportunity to understand what they allegedly did wrong, which is essential to refining and understanding the nature of the claims."  (Doc. 10 at 14.)   The County is correct.

---

[1] Breton did not address any of his other generalized conditions allegations. Accordingly, they are considered waived and are also dismissed.

1.    **Applicable Standard**

As a preliminary matter, it is unclear from the Amended Complaint whether Breton was a pretrial detainee during his incarceration or at the time of the assault. The Eighth Amendment's prohibition of "cruel and unusual punishment" applies only after conviction and sentence. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Pre-trial detention, on the other hand, is governed by the Due Process Clause of the Fourteenth Amendment. *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 531 (1979)). While the protections under the two are largely concomitant, *see City of Revere*, 463 U.S. at 244 ("[T]he due process rights of a person in [a pretrial detainment] situation are at least as great as the Eighth Amendment protections available to a convicted prisoner."), and "[u]nder both clauses[] the plaintiff must show that the prison officials acted with 'deliberate indifference,'" *Castro*, 833 F.3d at 1068, the elements a plaintiff must show to prove such indifference are different, *id.* at 1070–71. To prove an Eighth Amendment violation, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1068 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A Fourteenth Amendment violation, on the other hand, does not require proof of subjective awareness. *Id.* at 1071. While Breton's status is unclear, his briefing relies on the

6

more onerous, Eighth Amendment standard. (*See* Doc. 12 at 9–10.)  Accordingly, that is the standard employed below.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Farmer*, 511 U.S. at 832 (internal quotation marks omitted).  While not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety," *id.* at 834, "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment," *id.* at 828.  Consistently, an Eighth Amendment violation in this context has two elements: first, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm, *id.* at 834, and second, the prison official acted with "deliberate indifference" to harm, i.e., the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," *id.* at 837.

### 2.    Substantial Risk of Serious Harm

To satisfy the first prong of an Eighth Amendment failure to protect claim— that the deprivation alleged is objectively, sufficiently serious—a plaintiff must "show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (internal quotation marks omitted).  "The objective question of whether a prison officer's actions have exposed an inmate to a substantial risk of serious

7

harm is a question of fact, and as such must be decided by a jury if there is any room for doubt." *Id.* at 1075–76. Here, Breton alleges that he, a non-violent offender, was exposed to a substantial risk of serious harm when he was placed in the same unit as Charlo, a violent offender. (Doc. 7 at ¶ 9.) Although the County disputes that Breton is a nonviolent offender, (*see* Doc. 15 at 4 n.2), it is not appropriate to resolve that factual dispute on a motion to dismiss. Breton's allegation that he was a "nonviolent offender" is therefore accepted as true. *Ariix, LLC*, 985 F.3d at 1114. Taking Breton's remaining allegations as true, a complete absence of any intake screening procedure, coupled with an allegation that inmate areas lack both audio and visual supervision, "can create an objective risk of substantial harm in a prison setting that is sufficient to satisfy the objective prong of the deliberate indifference test." *Lemire*, 726 F.3d at 1076.

### 3.    Deliberate Indifference

To satisfy the second prong, Breton must show that prison officials acted with deliberate indifference, meaning that they knew of and consciously disregarded an excessive risk of harm to inmate health or safety. *Castro*, 833 F.3d at 1068. Inherent in this element, however, are allegations regarding specific conduct of individual defendants. Here, Breton has not made any allegations regarding any individual prison officials. As such, it is impossible to assess who was aware of which risk and what actions could have reasonably been taken in response to those risks. Even though Breton is correct that a plaintiff need not

8

show that a facility had advance notice of the specific threat, *Farmer*, 511 U.S. at 848 ("[T]he failure to give advance notice is not dispositive."), a showing of "awareness" is still required based "on any relevant evidence," *id.* at 848–49. In absence of allegations linking his injuries to specific conduct by specific defendants—even identified with Doe monikers—the vague and conclusory allegations that the defendants generally failed to properly screen inmates are insufficient to state a claim for deliberate indifference. Accordingly, Breton's failure to protect claim is dismissed. *See also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (reaffirming that § 1983 claims "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation").

## B.    Medical Care

To state an Eighth Amendment inadequate medical treatment claim, an inmate must show "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The test for deliberate indifference has two parts: "First, the plaintiff must show a serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id.* This second prong "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it

9

may be shown by the way in which prison physicians provide medical care."

*Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  "Liability under

section 1983 arises only upon a showing of personal participation by the

defendant."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Here, Breton alleges that he was knocked unconscious and remained that

way for approximately ten minutes, (Doc. 7 at ¶¶ 13, 15), was taken to the

emergency room, "underwent a CT scan, was treated and released," (*id.* ¶ 17), and

returned to the emergency room on three subsequent occasions, (*id.* ¶ 19).  He also

alleges that he passed out while standing and was taken to the emergency room and

given another CT scan, (*id.* ¶ 20), and that after his release he was diagnosed with

having suffered a traumatic brain injury and two strokes, (*id.* ¶ 21).  Absent from

these allegations is an assertion of what, if anything, prison officials should have

done differently as it specifically relates to the provision of medical care.  Breton's

response brief clarifies that his claim is premised on a delay of care based on the

ten-minutes he was on the floor directly after the assault.  (*See* Doc. 12 at 14–15.)

Even so, as was the case with his failure to protect claim, Breton does not link his

alleged injury to any specific conduct by any specific defendant.  His generalized

claim that his care was insufficient fails to state a claim for deliberate indifference.

Accordingly, this claim is also dismissed.

## II.    Free Exercise of Religion (Count 2)

The County argues that Breton's free exercise claim should be dismissed because it is "conclusory and implausible." (Doc. 10 at 19.) Breton does not object to the dismissal of Count 2. (Doc. 12 at 20.) This claim is dismissed.

## III.   *Monell* Claim (Count 3)

Breton claims that Lake County is also responsible for the Eighth Amendment violations discussed above; that liability is premised on *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). To establish a § 1983 claim against a local government for failing to act to preserve a constitutional right, a plaintiff must establish: (1) his constitutional right was violated; (2) the municipality had a policy; (3) the policy "amounts to deliberate indifference" to plaintiff's constitutional right; and (4) the policy is the "moving force behind the constitutional violation." *Lockette v. Cnty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020). The County argues that Breton's *Monell* claim fails on the pleadings for two reasons: (1) lack of an underlying constitutional violation and (2) absence of a policy. Neither ground supports dismissal here.

### A.   Underlying Violation

In arguing that municipal liability must be predicated on an individual officer's constitutional violation, the County cites *City of Los Angeles v. Heller*, in which the Supreme Court stated that neither *Monell* "nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer

11

inflicted no constitutional harm." 475 U.S. 796, 799 (1986). Subsequently, however, the Ninth Circuit has clarified this very issue, holding that "[i]f a plaintiff establishes he suffered a constitutional injury *by the City*, the fact that individual officers are exonerated is immaterial to liability under § 1983." *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002); *see also Chew v. Gates*, 27 F.3d 1432, 1438 (9th Cir. 1994) ("Supervisorial liability may be imposed under section 1983 notwithstanding the exoneration of the officer whose actions are the immediate or precipitating cause of the constitutional injury."); *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 604 (9th Cir. 2019) ("[C]onstitutional deprivations may occur not as a result of the actions of the individual officers, but as a result of the collective inaction of the municipal defendant." (quotation marks and alteration omitted)). Thus, the absence of a constitutional deprivation by an individual officer is not dispositive of Breton's § 1983 claim against the County.

**B.     Policy**

A core question following *Monell* is when local government conduct equates to policy. Here, Breton argues that his injuries were caused by the County's longstanding custom or practice of not properly screening or segregating inmates and failing to train its employees.[2] Regardless of the theory of liability, a plaintiff must show both deliberate indifference and that the policy was the direct and

---

[2] While Breton also alludes to *Monell* liability based on a lack of adequate medical care, (*see* Doc. 12 at 15), his actual argument is premised entirely on a lack of adequate screening and monitoring, (*id.* at 16–19).

proximate cause of the constitutional violation. *Horton by Horton*, 915 F.3d at 603. At this stage of the proceeding, Breton's *Monell* allegations are sufficient to state a plausible claim.

"Absent a formal governmental policy, [Breton] must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quotation marks omitted). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled [municipal] policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* "A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)). In an "omission" case, a plaintiff must show the municipality's policy of inaction "amounts to deliberate indifference to the plaintiff's constitutional right, and that the policy caused the violation, in the sense that the municipality could have prevented the violation with an appropriate policy." *Id.* (alternations omitted). Consistently, a plaintiff must show that the municipality "was on actual or constructive notice that

13

its omission would likely result in a constitutional violation." *Id.* at 1145 (internal quotation marks omitted).

Another policy of inaction that can "serve as the basis for § 1983 liability" is a local government's failure to train its employees. *City of Canton v. Harris*, 489 U.S. 378, 379 (1989). "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008) (quotation marks omitted). Accordingly, a plaintiff "must demonstrate a 'conscious' or 'deliberate' choice on the part of the municipality in order to prevail on a failure to train claim." *Id.* (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

According to Breton, Lake County has a long-standing custom and practice of overcrowding inmates, failing to screen and segregate inmates, detaining inmates without adequate monitoring, and failing to train its staff on these matters. In support of this claim, Breton alleges that he, a nonviolent offender, was placed with a violent offender, which resulted in him being assaulted. (Doc. 7 at ¶¶ 6–13.) He further alleges that he was then placed back with Charlo after the assault. (*Id.* at ¶ 18.) As such, the Amended Complaint does not include factual claims necessary to infer that the County's customs and practices are so "permanent and well settled" that they carry the "force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks omitted). Breton does not allege,

for example, that any other inmates were misclassified or improperly screened or that any other assaults occurred. As it stands, the complaint admits only the possibly that Breton's assault was not an "isolated or sporadic" incident. *Trevino*, 99 F.3d at 918. A possibility is not enough. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. Thus, Breton fails to plausibly plead liability under a "pattern and practice" theory.

Nevertheless, although "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014), the Ninth Circuit has recognized an exception where "the municipality's inadequacy is so likely to result in the violation of constitutional rights that a jury could reasonably find § 1983 liability without needing a pattern of violations to find the County culpable," *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 796 (9th Cir. 2016). In that case, however, the consequences of such inaction must be "highly predictable" and "obvious" and the alleged failure also must have "led directly to the very consequence that was so predictable." *Bd. of Cnty. Comm'rs Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997).

Breton's allegations here show this action is one of the rare cases in which a local government's deliberate indifference may be inferred without allegations about a pattern of similar violations. The allegations permit an inference of liability based on two types of deliberately indifferent policy choices. First,

according to the Amended Complaint, the County does not have an intake policy and does not train its officers to screen inmates. (*See* Doc. 7 at ¶ 26.) These allegations paint a plausible picture of deliberate indifference to the constitutional rights of individuals that have been placed in the County's custody. If the County truly has no inmate screening policy, as this Court must assume at this stage, it is plausible to infer that Breton could prove the County was deliberately indifferent because serious injuries are the obvious and highly predictable consequence of haphazard inmate classification. Second, the Amended Complaint permits a plausible inference that the County is liable for having no policy or mechanism for monitoring inmates. (*See id.*) And, the dangers of inadequate monitoring is acute where, as here, inmates are allegedly not properly classified in the first instance. *See Castro*, 833 F.3d at 1075–76 (discussing the County's decision to place unscreened "intoxicated inmates in sobering cells that contained inadequate audio monitoring").

      Both of the above alleged policies also satisfy the relevant causation standard, i.e., "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* at 1075 (quoting *Canton*, 489 U.S. at 385). If the County properly screened and classified inmates, as Breton alleges it should have, Breton would not have been placed with Charlo. And if the County properly monitored inmates, as Breton further alleges it should have, then staff could have

16

intervened.  Accordingly, Breton's *Monell* claim for liability based on a policy of inadequate screening and monitoring survives at this early stage.

## IV.    State Law Claims

In addition to the federal claims outlined above, Breton alleges that the defendants deprived him "of the rights secured by Article II, Sections 3, 4, 5, 16, 17, 22, 28, and 34 of the Montana Constitution; the Montana Religious Freedom Restoration Act . . . ; and state statutory law relating to the operation and maintenance of jails and the rights of prisoners, including MCA §§ 7–32–2121; 7–32–2201; 7–32–2204, 7–32–2205; 7–32–22334; 45–5–204; 46–18–101; and 46–18–801." (Doc. 7 at ¶ 72.)  Breton also alleges that the defendants were negligent. (*Id.* at ¶¶ 74–75.)  The County argues that these allegations fail to state a claim because: (1) they are duplicative of Breton's federal claims; (2) they contain no more than a threadbare recital of the elements; (3) he relies on statutes that do not confer a private right of action; and (4) he relies on sections of the Montana Constitution that do not apply.  In response, Breton provides little argument, stating only that (1) overlapping claims are permitted at this stage, (2) "Lake County does not present enough argument or legal authority for the Court to rule on" the availability of private remedies, and (3) he may proceed under the broader Montana Constitution's right to dignity under Article II, § 4 and right to freedom from cruel and unusual punishment under Article II, § 22.  (Doc. 12 at 20–21.) Ultimately, only Breton's negligence claim is adequately pled.

### A.   Montana Constitutional Provisions and Statutes (Count 4)

While Breton is correct that duplicativeness alone is not fatal to his claims, the County persuasively argues that his Count 4 pleadings are threadbare. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662.   It is not enough, however, to simply string cite state statutes and constitutional provisions with no indication of how they fit within the factual framework of the case.  While Breton may be right that the County's "private right of action" argument is underdeveloped, that is unsurprising given the threadbare nature of Breton's claim itself.  It is not the responsibility of either the defendants or this Court to fashion a cause of action based on statutory or constitutional references alone.  Count 4 is therefore dismissed.

### B.   Negligence (Count 5)

Breton further alleges that the defendants' conduct "does not comply with the standard of care, and included negligent training, and supervision of correctional officers; negligent enactment, enforcement, and violation of correctional policies and procedures; negligent violation of [his] constitutional, statutory, and common law rights; and negligent performance of official duties." (Doc. 7 at ¶ 74.)  "To maintain an action in negligence, the plaintiff must prove four essential elements: duty, breach, causation, and damages." *Fisher v. Swift*

*Transp. Co., Inc.*, 181 P.3d 601, 606 (Mont. 2008).  Contrary to the County's

assertion that there is no generalized duty to protect, "a county assumes heightened

duties of care with respect to persons in its custody," *id.*, and "a reasonably prudent

defendant should foresee the risk inherent in inadequately supervising or

controlling an inmate," *Prindel v. Ravalli Cnty.*, 133 P.3d 165, 179 (Mont. 2006).

At this stage of the proceedings, Breton has alleged a plausible negligence claim

based on the fact that both he and his attacker were in the County's custody at the

time of the assault and the County failed to respond for over ten minutes.  While

the County may be able to prove that it did not breach a specific duty owed to

Breton or that his injuries did not arise from such a breach, neither issue can be

resolved at this stage.  Dismissal is therefore inappropriate.

CONCLUSION

Based on the foregoing, IT IS ORDERED that the County's motion to

dismiss (Doc. 9) is GRANTED in PART and DENIED in PART.  The motion is

GRANTED as to Counts I, II, and IV, which are DISMISSED.  The motion is

DENIED as to Counts III and V.  The County must file its answer within twenty-

one (21) days of the date of this Order.

DATED this 12th day of December, 2022.

Donald W. Molloy, District Judge
United States District Court